# CHARLESTON.

ANDREW W. HANNAH v. WILSON LUMBER COMPANY *et als.*

Submitted October 17, 1922.   Decided October 24, 1922.

1.   APPEAL AND ERROR—COSTS—*Imposition by Court of Equity of Payment of Costs Not Disturbed Unless Discretion Abused.*

Courts of equity have inherent power and discretion to impose payment of costs, and unless the court has exceeded its power or clearly abused its discretion, its imposition of payment of costs will not be disturbed. (p. 109).

2.   EQUITY—*Not Error to Condition Filing Amended Bill or its Dismissal, After Adverse Finding on Original Bill on Payment of Costs.*

Where a suit has been instituted to enjoin the cutting and removal of timber and for the further purpose of ascertaining the boundary of plaintiff's land from which the timber is being severed, and confirming his title thereto, without allegation in the bill that plaintiff has sued or is about to sue at law to try the title, and an injunction has been granted; defendants promptly interpose demurrers and file answers, fully setting up their title to the land deraigned from the Commonwealth; voluminous depositions are taken upon the issue of title; the cause submitted and decided for defendants for want of equity jurisdiction; it is not error to require plaintiff, upon tendering an amended bill praying a continuance of the injunction pending the trial of title in an ejectment suit which he then proposes to institute, to pay the costs which have accrued, as a condition precedent to the filing of the amended bill; or to permit it to be filed, conditioned upon dismissal of the cause if the costs are not paid within 30 days. (p. 109).

Appeal from Circuit Court, Randolph County.

Suit by Andrew W. Hannah against the Wilson Lumber Company and others. From two decrees, one permitting plaintiff, after dissolving injunction and dismissing his bill,

to file on the law side of the court his declaration in eject-
ment against defendants, only upon condition that plaintiff
pay defendants the costs incurred to date, and the other,
subsequently entered, bringing the cause on to be heard, dis-
solving the injunction, and awarding defendants execution
for collection of the costs, plaintiff appeals.

*Affirmed.*

*W. B. & E. L. Maxwell,* for appellant.
. *C. H. Scott* and *H. G. Kump,* for appellees.

LIVELY, JUDGE:

This appeal is from two decrees, the first entered on the
8th of November, 1921, which recites that upon considera-
tion of the case upon all the orders, decrees, proceedings and
evidence, the court was of opinion, for reasons stated in
writing and made a part of the record, that the cause was
for defendants and that the injunction be dissolved and plain-
tiff's bill dismissed. Thereupon plaintiff asked leave to
amend his bill, and tendered and asked leave to file same, and
at the same time, on the law side of the court, tendered and
asked leave to file his declaration in ejectment against the
defendants. The decree then permitted the amended bill to
be filed, and gave plaintiff leave to file a declaration in eject-
ment on the law side of the court, and remanded same to
rules to be matured for trial; but it allowed the amended
bill to be filed and process issued thereon only upon the con-
dition that the plaintiff pay to defendants the costs which
had been incurred to date, and gave recovery thereof in
favor of plaintiff and against defendants, required payment
thereof within thirty days from the rising of the court, but
upon failure to pay same within that time the decree fur-
ther adjudged that the injunction should be dissolved and
the cause stand dismissed at plaintiff's costs. The other de-
cree, that of the 22nd of December, 1921, brought the cause
on again to be heard, dissolved the injunction, dismissed the
bill and awarded execution for the collection of the costs,
because thirty days had expired from the date of the other

decree without payment of costs by plaintiff as therein required.

The sole question presented for decision is whether the lower court had jurisdiction to require payment of costs as a condition precedent to filing the amended bill, and dismissing plaintiff's bill upon failure so to do; and if the court had jurisdiction to require payment of costs as a condition precedent, then has it abused its discretion?

The litigation arises over an interlock of eighteen or twenty acres from which defendants were cutting and removing timber at the time of the institution of the suit. Plaintiff had obtained a deed in 1906 for 381 acres from Conrad, which set out the boundary of land, and the bill, which exhibits this deed, avers that plaintiff believed his title to the land was regularly derived from the Commonwealth of Virginia. Plaintiff also avers, upon information and belief, that Emma C. Scott, C. H. Scott, Edna S. Kump and H. G. Kump, defendants, claimed to be owners of land in the vicinity of his tract and had sold the timber thereon to defendant, Wilson Lumber Company, and in locating the boundaries of their land had included a large part of the plaintiff's land, upon which the Lumber Company had entered and begun severing and removing the timber therefrom under its purchase. The bill prayed for an injunction to prevent the cutting and removing of the timber, asked for an accounting for the timber already severed; and that the boundary of plaintiff's land be ascertained and his title confirmed to him. The injunction was promptly awarded. The bill was presented in the latter part of January, 1921, and on the 31st of March, 1921, defendants filed demurrers thereto, alleging several grounds, among which was that the bill admitted that the defendants were in possession of the land and severing the timber therefrom, but did not allege that the plaintiff had instituted or was about to institute an action of ejectment or other appropriate action at law, to try the title and adjudge the rights of the parties. The motion to dissolve the injunction was overruled, and defendants answered fully, setting up their title to the land in controversy, exhibiting therewith deeds

showing the deraignment of title thereto from the Commonwealth of Virginia. The parties then took voluminous testimony; and on June 2nd defendants again made a motion to dissolve, and asked for a final decree; which was refused; and on June 21st the cause was submitted for hearing, but the plaintiff then obtained leave to take additional evidence, which was taken and filed. The cause was then submitted and the court handed down a written opinion to the effect that the cause was for the defendant, whereupon plaintiff asked leave to amend the bill and institute a suit in ejectment, resulting in the decree of October 8th as hereinbefore set out.

The above statement shows that plaintiff at the time of filing the bill knew or had reason to know that the Scotts and Kumps claimed title to and had possession of, the interlock of the eighteen or twenty acres which is in controversy. On the 31st of March, when the demurrers and answers were filed, it was plainly apparent that there was a serious controversy over the location of the western line of plaintiff's land.

In order for a plaintiff to maintain an injunction for cutting timber from his land by a defendant, there must be certainty of title in the plaintiff to give equity jurisdiction. If the title is dependent upon a question of fact, which a jury should decide, the bill must aver the intention of plaintiff to institute an action in ejectment or that one has already been instituted before equity will enjoin. *Pardee & Curtin Lbr. Co. v. Odell,* 71 W. Va. 206. If the location of a line or the question of adverse possession depends upon conflicting testimony, these are issues of fact to be determined by a jury. In such cases the jurisdiction of equity is properly invoked, not for the purpose of determining the title, but only to preserve the subject matter of the controversy in *statu quo,* until the action of ejectment is tried. By far the greater part of the costs were incurred after it had become plainly apparent that equity did not have jurisdiction to settle the controversy, but only to preserve the timber until the title could be determined in the proper forum. Did the court

under such circumstances have discretion to require plaintiff to pay the costs incurred when by his amendment he proffered to go to the proper forum to try the title, and continue in force the injunction to preserve the *status quo*. It will be observed from an inspection of the two decrees appealed from, and from the opinion of the court on which they are based, that the court decided the cause upon the question of jurisdiction, practically sustaining the demurrers to the bill which he had theretofore overruled. We do not find in the record an order overruling the demurrers in terms, but the cause seems to have been proceeded with as if the demurrers had been overruled. The decrees do not prevent or estop plaintiff from proceeding with his action of ejectment nor do they prevent him from hereafter receiving proper relief in equity for preserving the timber until the ejectment case can be tried. The decrees, properly construed, simply require the payment of costs which have been incurred, as a condition precedent to the amendment to plaintiff's bill. The costs were largely incurred in the efforts to sustain an issue which the court plainly had no jurisdiction to try—the title to the land lying within the interlock. Plaintiff superinduced their incurrence in his persistence to press and maintain this issue. Costs are the creation of statutes, at common law there were none. Statutes authorizing costs are in England and many of our states regarded as penal. 11 Cyc. 27; 15 C. J. 24. Our statute, chap. 138, sec. 10, declares them not penal, and provides that the law of costs, as contained in that chapter, shall not take away or abridge the discretion of a court of equity over the subject of costs except as therein set out. ''Costs on permitting an amendment are in the discretion of the court. The general rule is that in all cases where a party is allowed to amend, he shall be charged with the costs of all proceedings which will be vacated by the amendment.'' Milliman on Law of Costs, 62. By plaintiff's amendment he asked to abandon the issue of title sought to be decided, and move it to another forum. The costs incurred on that issue were abortive. His motion came after submission of the cause, followed by an adverse decision. We

think it was within the discretion of the court to require payment of the costs so incurred, as a condition precedent to granting the motion. In sec. 48 of Milliman's Law of Costs the rule is stated, that whenever a favor is granted upon a motion, the court in granting it has a right to impose any terms or conditions which are in conformity with the usages of courts in similar cases, and which tend to do justice in the action, citing *Stiles* v. *Fisher,* 3 How. Pr. 52. If the moving party is dissatisfied with the terms imposed, he need not accept the favor. ''Generally, when the granting of relief prayed for is discretionary with the court, as upon granting a new trial or leave to amend, the court may impose, as a condition precedent, the payment of costs previously incurred.'' 5 Ency. Ple. & Prac. 263; citing *People* v. *O'Connell,* 23 Cal. 281; *Kletchem* v. *Elliott,* 20 N. Y. Supp. 745; *Jackson* v. *Bell,* 19 *Johns.* 270; *Jacobs* v. *Crusha,* 2 Q. B. 37.

Generally, statutes of amendments leave the question of costs to the discretion of the court, and its action in that regard is not subject to review, unless there has been a clear abuse of discretion. 15 C. J. 64, sec. 107, title, ''Payment of costs as condition precedent to amendment.'' A court of equity has power and discretion to award costs, an inherent power recognized by our statute chap. 138, sec. 10. But it is argued that the lower court did not have power to penalize plaintiff by prescribing payment of costs as a precedent to the exercise of its jurisdiction, and having exercised such power has abused its discretion, which this court should correct, although that is the only error committed; citing *Ross* v. *Gordon,* 2 Minn. 289; *Peers* v. *Barrett,* 12 Grat. 410; *Goodloe* v. *Woods,* 115 Va. 540; and *Barnett* v. *Spencer,* 2 H. & M. 7. In the Ross case, cited, it was held that the lower court had erred in adjudging costs against the plaintiff in an injunction suit where he had substantially prevailed,— an abuse of discretion. In *Peers* v. *Barnett,* land had been sold in 1828 and a bond given with condition to perfect the title. In 1834 the vendor sued to collect the purchase money, and vendee answered that title had not been perfected. The

case lingered on the docket until 1852, partly by the fault of the vendee. The lapse of time coupled with the uninterrupted possession of vendee under the deed, quieted the vendee's title and cured the defects therein, making a decree of sale for purchase money proper. The decree awarded costs against vendee, which the appellate court held was error, inasmuch as the vendee at the time the suit was brought was justified in resisting the sale until the vendor had complied with the terms of his contract appearing in the condition of the bond, and costs should not have been awarded against him. He substantially prevailed, and the court abused its discretion in awarding costs against him. In *Goodloe* v. *Woods,* in which was involved a controversy over defects in the title of land conveyed, costs were awarded defendants, who appealed, and the appellate court approved the action of the lower court in that regard, saying: "That costs are in the discretion of the court cannot be questioned, and its action will not be reversed, except upon a clear showing of abuse," citing *Dillard* v. *Dillard,* 77 Va. 820. These cases illustrate the doctrine that the power to award costs is inherent in courts of equity, to be exercised with sound discretion, subject to review where there is a clear abuse.

We are of the opinion that the court had power to impose upon plaintiff the payment of costs as a condition precedent to filing the amended bill, especially as it was tendered after the cause had been submitted and decided; and under the facts disclosed we do not find that there was a clear abuse of discretion in so doing.

*Affirmed.*