# CHARLESTON.

W. H. FILE, *Admr., etc. v.* ANDREW BSHARAH *et als., trading.*

## (No. 5766)

Submitted February 15, 1927.   Decided March 1, 1927.

PARTNERSHIP—*Personal Representative May Not, Without Offering to Rescind, Sue for Value of Asset Omitted at Public Auction of Deceased Partner's Interest Unless Fraud or Mutual Mistake is Charged; Bill to Recover for Asset Omitted in Sale of Deceased Partner's Property Held Bad on Demurrer.*

Where a personal representative of a member of a partnership sells at public auction to the surviving partners the interest of his decedent in said partnership, he may not later, without an offer of rescission, maintain a suit in equity against said surviving partners to recover the value of an omitted asset of the estate of his decedent, unless such omission is charged to be the result of fraud or mutual mistake.

(Partnership, 30 Cyc. p. 650 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

HATCHER, JUDGE, absent.

Appeal from Circuit Court, Raleigh County.

Suit by W. H. File, administrator of the estate of Mike Courey Cassis, deceased, against Andrew Bsharah and others, surviving partners, trading as the Beckley Department Store. From a decree for plaintiff, defendants appeal.

*Reversed; cause remanded.*

*C. M. Ward* and *J. H. McGinnis,* for appellants.

*J. E. Summerfield* and *File, Goldsmith & Scherer,* for appellee.

WOODS, JUDGE:

This is a suit in equity by the administrator of the estate of Mike Courey Cassis, deceased, against Andrew Bsharah, Albert Shaley and Daib George, as surviving partners, trading as Beckley Department Store, for the purpose of recovering a one-fourth share in a certain alleged leasehold estate and other relief.

On July 22, 1916, Smith Merchandise Company, a retail store in Beckley, entered into a written contract with said defendants, wholesalers, operating in Charleston under the firm name of Shaley, George & Bsharah, whereby it sold said partners all of its stock and fixtures, etc., in Beckley. On the same day, a written partnership agreement was entered into between said defendants and Mike Courey Cassis, who was formerly in the employ and a stockholder of Smith Merchandise Company. This agreement sets up the purchase of the assets of Smith Merchandise Company for the sum of. $14,608.34, and that Shaley, George and Bsharah would conduct the business as a partnership under the firm name of Beckley Department Store. It also contained certain other provisions as conditions precedent to Cassis becoming a full partner in the partnership.

In August, 1919, Mike Courey Cassis was taken sick in Beckley, and was removed to Charleston, where he died two or three weeks later. The plaintiff here was appointed administrator, and an appraisement was made of Cassis' estate. By this appraisement such estate (aside from a few personal effects) consisted of an interest in the fixtures, accounts receivable, and cash in bank, of the Beckley Department Store, $39,741.26. The liabilities listed were unpaid invoices amounting to $12,936.93, and notes payable amounting to $4,489.20. The present worth of said business was computed to be $22,317.13, one-fourth thereof charged to be the interest of said decedent. This one-fourth interest was duly advertised for sale, pursuant to law, by said administrator, and on the 18th day of October, 1919, was sold at public auction. The defendants, surviving partners of said Beckley Department Store, became the purchasers of said one-fourth interest for the sum of $5,200.00, and agreed and bound themselves to assume all indebtedness of said firm. They paid the administrator $3,116.11, in cash, and entered into an agreement in writing whereby they claimed offsets against the estate of the decedent for the balance of the $5,200.00, and agreed that, in case they were not able to establish such offsets, then they would pay to the said administrator so much of the difference

between the amount paid and the amount bid for said interest of Cassis, as they were unable to establish by way of offsets against said indebtedness. In September, 1922, the said administrator, as such, filed a bill in equity, setting forth the foregoing facts, and in addition thereto that by deed dated the 30th day of September, 1916, Rose & Turner Company, a corporation, demised, let and leased unto said defendants, partners in trade as the Beckley Department Store, for a term of ten years, the room then occupied by said partnership, and an adjoining room; that although the name of said Cassis did not appear in the lease, he became, as a member of said partnership, the owner of a one-fourth interest in said lease, which was still in effect; that said administrator caused the same to be appraised on the 14th day of September, 1922, the appraisers fixing the value of the claimed one-fourth interest of Cassis therein, at $3,187.50 at the date of Cassis' death; that said administrator is entitled to have a decree for such amount; and, ''that at the time the appraisers appraised the estate of Cassis * * * they were not advised nor did they know * * * said decedent was the owner of a one-fourth interest in said leasehold, and for that reason the same was not appraised.'' The bill prayed for a decree against said defendants for the balance due from them on account of the purchase price of said Cassis' interest at the public sale, as aforesaid, and that they further be required to pay to said complainant one-fourth of the value of said leasehold, and for general relief.

The jurisdiction of a court of equity to entertain this bill was challenged by a demurrer, which was decided by the circuit court adversely to the defendants. This action is stressed as the controlling point of error here.

As already noted, the bill alleges that the interest of Cassis in the partnership was, after his death, regularly appraised and sold at public auction by the administrator, pursuant to law, after due notice, at which sale the defendants became the purchasers thereof. Thus we see that an accounting and settlement of the estate of Cassis has been had. According to all of the decisions, an action at law will lie

against the purchasers for the balance due on the purchase price. 30 Cyc. 464, and cases there cited. The bill here seeks a decretal judgment for such balance. It seeks to keep inviolate this settlement. Where a settlement is had, a creditor or partner cannot maintain a bill in equity for relief unless he can show fraud or mutual mistake in the settlement. *Hanks* v. *Baber*, 53 Ill. 292; *Holyoke* v. *Mayo*, 50 Me. 385. The bill under consideration contains no allegation of fraud or mutual mistake. In a nut shell, its purpose is to hold the defendants to their contract of purchase at the administrator's sale, and, further, to recover a one-fourth interest in said leasehold. The learned Chancellor, in his written opinion made part of the record, expressed grave doubts as to its sufficiency. The relief granted here was based on the case of *Tennant* v. *Dunlop*, 97 Va. 234. In that case there had been a *private* sale of the interest of the decedent partner by the administrator to the surviving partner, and the Virginia court held that the surviving partner should not be permitted to hold the representative at arms length, and seek to make a profit for himself. In that case there were actual misrepresentations of the partnership property by the surviving partner; the good-will of the business and trade-mark, which are incidents of the business, were not included in the effects sold. Charges were made in the bill that the private sale was induced by the undue influence, misconduct and fraud of Dunlop, the surviving partner, thereby resulting in a loss to the decedent's administrator, and in a corresponding gain to the purchasing partner. Under such circumstances the court held that it would be equitable to decree against such defendant the real value of the interest in the omitted assets. And this Court has held to the same effect. *Coal Company* v. *Petrelli*, 99 W. Va. 74. The rule there laid down is that, where one stands in a fiduciary or trust relation, he is bound to exercise the utmost good faith, and his dealing must be open and fair. For any advantage or gain obtained by fraudulent dealing, equity will grant relief, or the law will compel the sharer of the fruits of such conduct to respond in law in damages. The choice of several rem-

edies is available in such case: (1) The contract may be rescinded and recovery had of the purchase price paid; (2) the property may be retained and recovery had of damages in an action at law; or (3), in a proper case, an accounting may be compelled for the profits gained by such fraudulent conduct in a transaction without restoring or offering to restore the property by suit in equity to charge the guilty party as trustee of the profits fraudulently retained by him in the transaction. *Nickle Plate Land Co.* v. *Broom,* 96 W. Va. 586. The latter remedy was applied in the *Tennant* Case. It was applied in this case by the circuit court. Vastly different, however, are the facts in the instant case. Here there was a *public* sale of the effects. The purchasers, although surviving partners, are not charged in the bill with any fraud, or even with knowledge that such leasehold was a part of the partnership property. There is even no allegation in the bill that the administrator did not know at the time that the sale was made that the leasehold in question was held by the partnership. No claim is made that the purchasers did not buy in the light of the fact that the leasehold was a part thereof and of its value to the partnership. The chief aim of the bill here is to recover an asset omitted by reason of inadvertence where there has been a stated and settled account. This may be recovered in an appropriate legal action. *Kohlsaat* v. *Coal Company,* 90 W. Va. 656; *Harman & Crockett* v. *Maddy Bros.,* 57 W. Va. 66; *McNeel* v. *Baker,* 6 W. Va. 153; *Townes* v. *Birchett,* 12 Leigh 173. It is drawn on the theory that the indebtedness arising from the omitted asset does not involve a re-statement of the account agreed upon between the parties at the administrator's sale. Hence, there is no such an accounting sought as will give a court of equity jurisdiction. *State* v. *Carfer,* 83 W. Va. 331.

For these reasons, we are of opinion that the demurrer to the bill should have been sustained. The decree in this cause, therefore, must be reversed, the demurrer to the bill sustained, and the cause remanded with leave to the plaintiff to amend, if he be so advised.

*Reversed; cause remanded.*